IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAMION N. NICHOLSON,           ) | |
|               Plaintiff,         ) | |
| vs.                            ) | CIVIL CASE NO.  06-75-MJR-PMF |
| JO ANNE B. BARNHART,           )<br>Commissioner of Social Security, ) | |
|               Defendant.       ) | |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

    Plaintiff, Damion N. Nicholson, seeks judicial review of a final decision of the Commissioner of Social Security denying his January, 2003, applications for disability benefits and supplemental security income.  Nicholson's applications were denied following a determination by an Administrative Law Judge (ALJ) that he was not disabled.  That decision became final when the Appeals Council declined to review the ALJ's decision.  Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and §1383(c).

    To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).  The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  The Commissioner must determine in sequence: (1)

whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

The ALJ evaluated plaintiff's claim through Step 5 of the sequential analysis. He concluded that plaintiff's serious medical conditions significantly interfered with his ability to perform basic work activities but did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ also determined that, despite the severe impairments, plaintiff retained the ability to perform a significant range of medium work. Specifically, plaintiff had the ability to perform some jobs requiring medium levels of exertion, taking into account certain mental and visual limitations. The ALJ decided that plaintiff was not disabled because he was able to make a successful adjustment to significant numbers of janitor, hand-packer, and laundry worker positions (R. 16-25).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law,

and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.      Waiver of Counsel

Plaintiff challenges his decision to waive representation at the administrative hearing, claiming that his waiver was invalid because he was not adequately advised about his right to representation. When the initial determination was made, plaintiff was notified in writing of the following:

> If You Want Help With Your Appeal
> You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay towards the fee.

(R. 58). Plaintiff subsequently requested a hearing, using a form advising him of his right to be represented and that the Social Security Office would give him a list of legal referral and service organizations (R. 65). When plaintiff was notified of his hearing date, he was again reminded that he could choose to have a person represent him (R.70). At the hearing, plaintiff signed a written waiver of representation (R. 74). Before proceeding, the ALJ advised plaintiff that he could contact legal services for representation and that he could also contact attorneys listed in the phone book, explaining the steps to obtain contingency fee representation. When plaintiff indicated that he wanted to proceed without representation, the ALJ encouraged plaintiff to raise his hand during the hearing if he felt overwhelmed or that he made a mistake (R. 402). Plaintiff made no indication that he wanted representation.

A claimant has a statutory right to counsel at an administrative hearing. 42 U.S.C. § 406; 20

C.F.R. § 404.1700.  "If properly informed of the right [to attorney representation], the claimant may waive it." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994).  For the waiver to be valid, the ALJ must explain: (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.  *Id*.

Plaintiff correctly points out that he was not advised about the 25 percent cap on attorney fees.  Because this advice is mandatory, the omission shows that plaintiff's waiver of representation was invalid.  In these circumstances, remand is not automatic.  Rather, the burden falls on the Commissioner to show that the ALJ fully and fairly developed the administrative record.  *Id*.  The Commissioner meets this burden by showing that the ALJ probed the claimant for possible disabilities and uncovered all of the relevant evidence.  *Id*.  Typically, a full and fair record will contain all medical and treatment records, detailed testimony regarding plaintiff's symptoms and limitations, and medical opinions.  A significant omission indicates that the ALJ failed to develop a full and fair record.  *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

Defendant argues that the record shows that the ALJ developed a full and fair record. Plaintiff disagrees.  Before plaintiff's case was called for a hearing, the ALJ gathered the following information:

- Reports from St. Joseph Memorial Hospital
- A report from Raymond Leung, M.D.
- A report from Stephen G. Vincent, M.D.
- Records from Memorial Hospital of Carbondale
- A report from St. Francis Medical Center
- A report from John B. Wood, M.D.
- A consultative report from Prairie Cardiovascular
- Reports from Murphysboro Health Center
- Reports from Southern Illinois Regional Social Services
- mental and physical function assessments
- emergency department records

These records provide considerable information about plaintiff's medical history, symptoms, hospitalizations, diagnostic tests, diagnoses, and treatment. At the hearing, the ALJ further developed the record by encouraging plaintiff to describe some of his medical symptoms, hospitalizations, and medications. He asked about plaintiff's education and training, as well as his work experience. He inquired about plaintiff's hobbies and daily activities. The ALJ also heard testimony from a vocational expert. The ALJ made a considerable effort to provide a fair hearing, encouraging plaintiff to listen carefully, take notes, and ask questions. He called a recess when plaintiff seemed to need a break and gave plaintiff a second opportunity to present evidence. During the hearing, plaintiff had some difficulty liking events to specific dates. Otherwise, his responses were quite informative (R. 399-433).

Plaintiff notes that the ALJ failed to obtain medical source statements describing his ability to perform work activity. This information could have been obtained from treating physicians or the consultative doctor or psychologist. At the hearing, the ALJ did not ask plaintiff to describe his ability to perform basic work functions. Due to the lack of medical source statements or other statements describing plaintiff's symptoms and limitations, the ALJ had little reliable evidence to evaluate plaintiff's physical residual functional capacity (R. 23, 139, 175, 177).

Plaintiff also suggests that the ALJ failed to obtain records of ongoing counseling sessions. While some records were obtained from Southern Illinois Regional Social Services, those records reflect past treatment and do not describe ongoing treatment (R. 236-246). The ALJ inferred that plaintiff was not receiving ongoing therapy. The inference was unwarranted, as plaintiff testified regarding current mental health treatment (R. 23, 423). Recent records from Southern Illinois Regional Social Services would provide an accurate picture of plaintiff's treatment efforts. Those records would also reveal details about plaintiff's mental health which he could not relate himself

(R.423).

Plaintiff also notes that the ALJ could have ordered further evaluation by a neuropsychologist. The Court is not persuaded that the ALJ was required to purchase an additional consultative exam. However, while records from Dr. Robert Gardner, plaintiff's neurologist, were considered in connection with the initial determination, records from Dr. Gardner do not appear in the administrative record (R. 59). Dr. Gardner has knowledge of plaintiff's traumatic brain injury. His records should shed light on the nature and severity of that condition (R. 431). In particular, Dr. Gardner's records might lend support to plaintiff's mental limitations, arm tremor, and/or seizures, which plaintiff struggled to describe based on second-hand information (R. 368, 414, 416-17). The medical reports also describe breathing problems, dizziness, and arrhythmia diagnosed as Wolff-Parkinson-White syndrome. The nature and extent of these conditions were not fully explored.

In sum, because plaintiff was not advised of the cap on attorney fees, his waiver of representation was invalid. Considering plaintiff's complex medical history and numerous problems, the Commissioner has not satisfied her burden of showing that the administrative record was fully developed. Remand for full development of the administrative record is appropriate.

**II.     Vocational Testimony**

Plaintiff also argues that the ALJ erred by relying on vocational expert testimony without ascertaining whether the testimony conflicted with job descriptions in the Dictionary of Occupational Titles. He suggests that the ALJ's Step 5 determination is invalid because some of the jobs identified by the vocational expert do not correspond with his assessed residual ability to function. Defendant argues that the vocational expert's testimony provides substantial support for the ALJ's finding.

As part of the obligation to fully develop the record, ALJs have an affirmative duty to inquire on the record as to whether there is or is not consistence between the vocational expert's testimony and the Dictionary of Occupational Titles. Social Security Ruling 00-4p. If the expert's testimony

is not consistent with the DOT, the ALJ must obtain an explanation for the expert's disparate view.

In making a decision, the ALJ relied on vocational testimony from Dr. Taylor, finding that "Dr. Taylor stated that his testimony did not conflict with information contained in the DOT" (R. 25). The ALJ's reliance on Dr. Taylor's testimony is based on an inaccurate perception of the testimony. Dr. Taylor did not confirm or deny that his testimony was consistent with information in the DOT (R. 425-433). On remand, the ALJ should further complete the record by complying with the requirements of SSR 00-4p.

### III.   Residual Functional Capacity Assessment

Plaintiff argues that the ALJ failed to support his assessment of residual functional capacity by making a function-by-function assessment of symptoms linked to plaintiff's severe impairments. Defendant argues that substantial evidence supports the ALJ's assessment.

Residual functional capacity (RFC) is an assessment of the work-related activities an individual can perform despite physical and mental limitations. SSR 96-8p; 20 C.F.R. § 404.1545(a). Before expressing a claimant's residual functional capacity in categorical terms, the ALJ must make a detailed function-by-function assessment of current physical and mental abilities, including the ability to sit, stand, walk, lift, carry, push, and pull. SSR 96-8p. There should be a narrative discussion building an accurate and logical bridge from the evidence to the conclusions. *Id*.

The ALJ explained why certain pieces of evidence did not receive controlling weight and described plaintiff's residual functional capacity. The ALJ did not identify the evidence relied on in making the assessment. On remand, the ALJ should comply with SSR 96-8p by making a detailed function-by-function analysis of plaintiff's physical abilities and limitations and explain how the evidence supports his assessment.

### III.     Conclusion

IT IS RECOMMENDED that the Commissioner's final decision denying Damion N. Nicholson's applications for disability insurance benefits and supplemental security income be REVERSED.  This action should be REMANDED for further proceedings consistent with this report.

**SUBMITTED:   June 19, 2007   .**

*s / Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**